SHERMAN MEDILL *et al.* v. E. W. SNYDER, *as Administrator, etc., et al.*

No. 10,818. (58 Pac. 962.)

1. WILL—*Contest—Estoppel.* The general rule is that one who receives and retains property and benefits under a will thereby recognizes its validity, and is estopped to deny or contest it; but this rule does not apply where such person acted in ignorance of the facts showing invalidity and of her rights in the premises.

2. ———— *Benefits Returned.* In such case, if, when a legatee learns the facts of invalidity as to her rights, she returns or offers to return what has been received under the will, she may institute a proceeding to set the will aside and assert her rights in the estate under the law.

3. ———— *Findings by Jury.* In an action to set aside a will, the court may call a jury to aid it in determining disputed questions of fact, but it is optional with the court whether it will adopt the findings of the jury or ignore them and make findings of its own. When the court gives independent consideration to the evidence and makes its own findings of fact, on which judgment is rendered, errors committed by the jury become immaterial.

4. ———— *Hypothetical Questions.* A hypothetical question may be based on any assumption of facts which the testimony tends to prove, and it is held that there was evidence to sustain the assumed facts in the questions asked.

5. ———— *Insane Delusion Defined.* There may be an insane delusion, although the belief entertained is not in the nature of things a physical impossibility; but if such belief is entertained against all evidence and probability and after argument to the contrary, it affords grounds for inferring that the person entertaining it labors under an insane delusion.

6. ———— *Findings Conclusive.* The credibility of witnesses and the probative force of the facts as to testamentary incapacity were for the determination of the trial court, and, it appearing that there was legal evidence to support the findings, these matters are not open for further consideration.

Error from Leavenworth district court; LOUIS A. MYERS, judge. Opinion filed November 11, 1899. Affirmed.

*O. C. Phillips, William Dill,* and *Waggener, Horton & Orr,* for plaintiffs in error.

*William C. Hook, John H. Atwood,* and *James A. Reed,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : On the 3d day of July, 1894, James Medill died, in Leavenworth, having made a will on the 12th of the previous month devising to his family an estate of the estimated value of $80,000. He gave to his daughter, Nana Medill, the home in Leavenworth and the furniture therein, and directed that $15,000 of mortgages and securities be set aside for her use, the income of which should be paid to her semiannually during her life, the fund to be managed by the son, Sherman Medill, who was made executor. The day before his death a codicil to the will was executed by him, adding $2000 to the fund set aside for Nana. The will provided that at her death the trust fund should go to the heirs of her body, if any, and, if there were none, that it should be paid to the heirs of Sherman Medill. The will also set apart $5000, the income of which should be paid to Fairy M. Hollingsworth, the child of a deceased daughter of the testator, the management of which was also placed in Sherman Medill, and it was provided that if her marriage should be unsatisfactory to him, or she should die, the fund or property should go absolutely to and become the property of Sherman Medill. The sum of $3000 was devised to a son of Sherman Medill, and all the residue of the estate was devised absolutely to Sherman Medill. The will was probated on July 6, 1894, and in the succeeding month $17,000 in value

of securities was set apart for the use of Nana, and was approved and accepted by her.

On September 5, 1895, Nana brought this action, alleging that her father was not of a sound and disposing mind when the will and codicil were executed, and that in the execution he was subjected to undue and improper influences by Sherman Medill, to whom most of the estate was devised; and for these reasons she asked that the will be set aside. Fairy M. Hollingsworth appeared by her guardian, and in her answer attacked the will, alleging that when it was made the testator did not have sufficient mental capacity to execute a will, and, further, that undue influence was exerted on him. Sherman Medill denied these averments, and pleaded that Nana, having selected certain securities in pursuance of the will, and having accepted them in writing, as well as other benefits under the will, was estopped to maintain an action to contest and set it aside. A jury was called to aid the court, and on the tetimony produced the jury found against Sherman Medill, and returned the following special findings of fact:

"1. Was the testator, James Medill, of sound mind and memory at the time he executed the will in question? A. No.

"2. Was the testator, James Medill, of sound mind and memory at the time he executed the codicil to the will in question? A. No.

"3. Was the execution of the will in controversy due to and the result of undue influence exerted upon the testator? A. Yes.

"4. When the plaintiff, Nana Medill, received property and money from her father's estate under the provisions of the will in question, did she do so in ignorance of her rights and without having knowledge of or being advised of the facts urged by her as grounds for setting aside the said will. A. Yes."

2—61 KAN.

The court thereupon approved, ratified and confirmed the verdict and findings of the jury, and on its own motion and from the evidence adduced in the cause made its findings of fact, as follows:

"*First.* That at the time of the signing of the will in question the testator, James Medill, was not of sound mind and memory.

"*Second.* That at the time of the signing of the codicil to the will in question the testator, James Medill, was not of sound mind and memory.

"*Third.* When the plaintiff, Nana Medill, received property and money from her father's estate under the provisions of the will and codicil in question in this cause, she did so in ignorance of her rights and without having knowledge of or being advised of the facts urged by her as grounds for setting aside the said will and codicil, and that she did not have such knowledge and was not so advised. until shortly before the commencement of this action."

The court thereupon entered a judgment vacating and annulling the will, and directing that the estate be administered as though James Medill had died intestate.

The first point contended for is that Nana Medill, having received and retained property under the will, has recognized its validity and is estopped to deny it. That is conceded to be the general doctrine, but it can have no application if she acted in ignorance of the facts and her rights in the premises. It is true she did not institute a contest until more than a year after her father's death, and that during that time she proceeded as though the will was valid, accepting and using the property and funds set apart for her as the will provided. Her testimony tended to show, however, that she did not learn the important facts relied on to show testamentary incapacity, nor what her rights were,

1, 2. Doctrine of estoppel inapplicable.

until about the time the action was begun.  She was acquainted with some of the circumstances cited to show unsoundness of mind, but there is testimony that many of the controlling facts indicating incapacity were unknown to her, and that she did not understand or learn that she could attack the will on such grounds until about the time the action was taken.  As soon as she learned the facts and understood her rights, she challenged the validity of the will and tendered back what she had already received under the will.  It would seem from the testimony that her conduct did not induce a change of position by Sherman Medill, nor operate as a fraud upon him, and it cannot if all that she received under the will is restored to the estate.  This is an essential element of equitable estoppel.  In the *Matter of Peaslee*, 73 Hun, 113, 25 N. Y. Supp. 940, it was held that, "where a legatee named in a will is paid a portion of her legacy by the executors thereof, she is not in a situation to attack the will until she puts the parties in a position where, whatever the result may be, no one can be the loser, because of the payments originally made to her."  Here, the legatee who accepted the benefits has offered to restore what was received, and, as we have seen, no one can be prejudiced or be the loser by her conduct.

In *Hamblett v. Hamblett*, 6 N. H. 333, the court decided that "a party who has received a legacy under a will cannot be permitted to contest the validity of such will without repaying the amount of the legacy or bringing the money into court."  In *Holt v. Rice*, 54 N. H. 402, it was held that the receipt of a legacy is to a certain extent an affirmance of the will, but that it is not an absolute bar to an action to annul the same; that a party desiring to attack the will should

make restitution of the money or benefits received, when the contest may proceed. The supreme court of Pennsylvania holds that an election *in pais* to take under a will should be intelligently made, and should be unambiguous and positive in its character, to amount to an estoppel. The rule seems to be that "a legatee who has received his legacy, and afterwards concludes to contest the will, may return the legacy to the executors and so relieve himself from the operation of the general rule that forbids him to take under the will that which the testator gave him, and at the same time deny its validity as to others." (*In re Miller's Estate*, 159 Pa. St. 562, 28 Atl. 441.)

The offer of restoration made by Nana Medill in her pleading was sufficient in a case of this character. (*Thayer v. Knote*, 59 Kan. 181, 52 Pac. 433.) We think that she ought not to be concluded if she did not comprehend her rights nor understand the facts bearing upon the invalidity of the will, and the trial court correctly instructed the jury that her acceptance of benefits would not conclude her if they found "from the evidence that such act was done in ignorance of her rights and without having knowledge of or being advised of the facts urged by her as grounds for setting aside the will."

A vigorous attack is made upon the finding that James Medill was not of a sound and disposing mind when the will was executed. We find much in the testimony strongly tending to show that he was sane and capable until shortly before his death, and if we were the triers of the fact we might hesitate on the testimony in the record to find testamentary incapacity. However, many circumstances were shown and much expert and other evidence produced, going to show unsound-

6. Finding of incapacity conclusive.

ness of mind and tending to sustain the findings. The credibility of witnesses and the probative force of the facts were for the trial court, and it appearing that there was legal evidence to support the finding, the question is not open to further consideration.

There is very little testimony which tends to show that the execution of the will was the result of undue influence exerted upon the testator, but, as the judgment of the court rests on testamentary incapacity alone, the point of insufficiency of evidence to establish undue influence is no longer material. While the jury found undue influence, the court, acting independently upon the testimony, and probably not being satisfied with the testimony offered to support that ground, did not find that there was undue influence. The action of the court in calling the jury was discretionary. For its own convenience or to satisfy its conscience, it can refer questions of fact to the jury, but the court is not bound by the findings made and may ultimately determine for itself all the questions in the case. It may accept and adopt the findings of the jury in whole or in part, or it may ignore them and upon independent consideration of the evidence make findings of its own ; and when the latter course is pursued the mistakes of the jury may be of little consequence. If the court had tried the case as though a jury trial was a matter of right, and had accepted and adopted as its own the findings of the jury without giving independent consideration to the facts, the errors of the jury might be worthy of consideration as grounds of reversal. (*Vickers v. Buck*, 60 Kan. 598, 57 Pac. 517.) It is contended that the court in this instance adopted the findings of the jury, and that therefore the errors committed by the jury are avail-

3. Adoption of findings of jury optional.

able in this court. The record shows that after the general and special findings of the jury were returned the court approved and ratified them, but it is clear from what followed that the court was unwilling to adopt or make them its own. The court afterward, on its own motion, took up the entire case, and upon the evidence made independent findings, on which its judgment is based. The finding as to testamentary incapacity at the time the will was executed is the same as that of the jury, while that as to undue influence was entirely omitted, and the finding that Nana Medill accepted benefits in ignorance of her rights differs from the one made by the jury on that subject, and enlarges it by the finding that she did not have such knowledge and was not so advised until shortly before the commencement of the action. The action of the court in determining the facts from the evidence for itself renders the objections to the findings made by the jury unimportant, as well as several other objections urged against rulings made in presenting the case to the jury. (*Rich v. Bowker*, 25 Kan. 7; *Delaney v. City of Salina*, 34 id. 532, 9 Pac. 271.; *Stickel v. Bender*, 37 id. 457, 15 Pac. 580 ; *Franks, Ex'x, v. Jones*, 39 id. 236, 17 Pac. 663 ; *Hudson v. Hughan*, 56 id. 152, 42 Pac. 701 ; *Caldwell v. Brown*, 56 id. 566, 44 Pac. 10.) It disposes of the point that the finding of testamentary incapacity negatives the finding of undue influence. We are not prepared to assent to the proposition that the two issues were irreconcilably inconsistent, but however that may be there is no such inconsistency where the judgment annulling the will rests on the ground of testamentary incapacity alone.

We find nothing substantial in the objection to the rulings on the evidence. A number of extended hypo-

Medill v. Snyder.

thetical questions were submitted to expert witnesses and it is contended that they did not **4. Hypothetical questions.** correctly state the facts brought out in the evidence.   Our examination of the record leads us to the opinion that they were within the range of the testimony offered by the parties attacking the will.   While the proof in support of some of the facts was slight, " a hypothetical question may be based upon any assumption of facts which the testimony tends to prove, according to the theory of the examining counsel."    (8 Encyc. Pl. & Pr. 757.) There appears to have been some evidence sustaining the assumed facts, and we cannot say that the questions were objectionable in form.

Complaint is made of an instruction to the effect that the testator might be capable of transacting the ordinary business affairs of life and sane on other matters, but that if the will was influenced and the direct offspring of an unfounded and insane delusion it could not be sustained.   Plaintiff in error says that a " delusion is a belief in something impossible in the nature of things or the circumstances of the case," and it is argued that supposed relations and a prospective marriage between Nana and her brother-in-law, who was greatly disliked by the testator, was not impossible.   While the definition given **5. Insane delusion defined.** may be found in the books, it is a too narrow conception of the term to say that it is a belief in something that is impossible. (1 Bouvier, 537 ; Whart. Cr. Law, § 37.)   The things believed may not exist, and there may be no grounds whatever for the belief, and yet their existence may not be a physical impossibility.   An instance cited is the persistent and wholly unfounded notion that a wife is guilty of adultery.   Another example is where

a parent, without the slightest pretense or color of reason, unjustly persists in attributing to a daughter a gross vice and uses her with uniform unkindness. Another is where a person, without cause or reason, insists that those who had administered medicine to him in sickness had given him poison. These things are not physical impossibilities, but if such a belief is entertained against all evidence and probability and after argument to the contrary, it would afford grounds for inferring that the person entertaining it labored under an insane delusion. We think the instructions cannot be regarded as erroneous, and, since the court made its own findings of fact from the evidence, the instruction is not of great consequence.

We find nothing in the admission of evidence or in the instructions to the jury that furnishes ground for reversal, nor is there anything substantial in the objections that there was misconduct of the prevailing parties and by the jury. The important questions in the case arise upon the facts, and these having been determined in favor of the defendants in error upon sufficient evidence, we are constrained to affirm the judgment.