FRANK L. LANG, et al., v. JOHN LANG, Appellant.

**Insanity:** DELUSIONS: EVIDENCE. An insane delusion is a belief in
1 something impossible in the nature of things, or the circumstances surrounding the afflicted person, and which refuses to yield to evidence or reason. And where such belief, owing to its character, is probably unfounded yet might be true, its truth will not be assumed in the absence of evidence. Thus evidence in a guardianship proceeding that defendant's former wife was industrious, and that his children were obedient, was admissible to show that his belief in a conspiracy between them to obtain his property was a delusion; but evidence of that character which was merely the expression of an opinion is not admissible, and a comparison of the conduct of his children with those of his neighbor's was immaterial.

**Same.** In a proceeding to appoint a guardian for the father of peti-

tioners and to set aside conveyances to his second wife, made as part of a contract with her for support during life, on the ground of mental incapacity, evidence of his first wife's devotion, the custom and habits of his children, and that he was profane and applied vile epithets to his former wife and children, was admissible for the purpose of refuting his belief of a conspiracy on their part to deprive him of his property, but not as direct evidence of mental unsoundness.

**Same.** The record in this case is held to contain sufficient evidence to indicate that defendant's belief that his first wife and children conspired to rob him of his property was a delusion.

**Same.** A copy of an account rendered by a son who managed his father's farm, showing the sale of stock from the farm, was the best evidence available on the subject, and admissible to refute the father's belief that he was being robbed by his family.

**Same.** Evidence that defendant's second wife was guilty of lacivious conduct, not shown to have been known to defendant, or that a suit had been instituted against her for alienation of affection by the wife another, was immaterial to any issue in this case; but defendant's testimony that he had no knowledge of facts derogatory of her morals prior to their marriage was competent, as tending to rebut any inference which might have been drawn from a knowledge of her character.

**Evidence:** NONEXPERTS: SCOPE OF CROSS-EXAMINATION. A nonexpert witness is permitted in the first instance to give his opinion of the sanity of a person, only after detailing the facts within his personal observation upon which the opinion is based; and he is not subject to cross-examination by a series of hypothetical questions involving practically every phase of the case.

**Insanity:** EVIDENCE. One entertaining the suspicion that his wife and children were seeking to deprive him of his property should be permitted to show that they consulted a lawyer regarding a settlement or division of the property, when charged with an insane delusion in that regard as ground for the appointment of a guardian.

**Same.** That one for whom it was sought to have a guardian appointed on the ground of insanity, because having conveyed his property to his second wife, bought and sold real property of large value without making an examination of it, was admissible on the issue of his mental condition.

**Same:** EXAMINATION OF ONE CHARGED WITH INSANITY. Great latitude should be allowed in the examination of one for whom it is

sought to have a guardian appointed on the ground of insanity. His recollection and understanding of business transactions; his manner of speech, memory,.and the state of his health; his ability to comprehend what he had done and was about to do; the accuracy of his judgment, and generally all matters calculated to aid the jury in determining his condition of mind, are proper subjects of inquiry.

**Expert evidence:** WEIGHT: DETERMINATION. It is the province of the jury to determine the relative value of the opinions of all witnesses, including experts.

**Guardianship:** INSANE PERSONS. One who is not possessed of sufficient mental capacity to preserve his property, but is subject to the will of others in the disposition of the same, should have a guardian appointed for him. The fact that he may become subject to the will of others at some future time is not sufficient ground for the appointment however.

*Appeal from Crawford District Court.*—HON. F. M. POWERS, Judge.

TUESDAY, APRIL 9, 1912.

On petition of plaintiffs, a temporary guardian of the property of John R. Lang was appointed, and on trial the jury found that a permanent guardian should be appointed to manage his property and affairs. He appeals. —*Reversed.*

*B. I. Salinger* and *L. H. Salinger,* for appellant.

*Conner & Lally,* for appellees.

LADD, J.—The plaintiffs are the sons and daughter of the defendant. Another son, Harry Lang, did not join in the petition,.and a daughter Hattie had died of tuberculosis. Their mother died January 21, 1908, and her surviving husband, the defendant, then sixty-two or sixty-seven years of age, married Leonora Regan, then twenty-one years of age and a sister of the wife of his son Thomas, April 17th

of the same year. Immediately after this marriage, he conveyed to her the one hundred and sixty acres of land on which he lived, and on July 25th of the same year signed and acknowledged a deed, purporting to convey to her the remainder of his land, or six hundred and eighty acres, and entered into a contract with her, which recited that he was doing so in order to provide himself a home and care in his declining years, and that his wife was about to abandon her home because of his intemperate habits, but desired to care for and wait on him if he reformed, and stipulated (1) that he would quit and forever abstain from the use of all intoxicating liquors as a beverage; (2) that he would not illtreat his wife, so as to endanger her health or life; (3) that he executes to her a deed of all his real estate in Crawford county, Iowa, intending thereby that no present title or estate shall pass to said wife until his death, and gives her all personal property owned by him at the time of his death, subject to the conditions:

(5) The said party of the second part, in consideration of the above agreement, hereby agrees to and does return to her said husband, and agrees to remain with him and to care for him as his wife until his death, except in case the said party of the first part shall break his said promise and again become addicted to the use of intoxicating liquors, or in case he shall abuse his said wife, so as to endanger her health or life; in either of which events, the said party of the second part may abandon her said husband and be excused from further living with or caring for her said husband. (6) It is also understood and agreed by the parties hereto that, in case the said party of the first part shall keep his said agreement in relation to abstaining from the use of intoxicating liquors as a beverage, and in case he shall keep his said agreement in relation to conducting himself towards his wife, so as not to illtreat her in such a manner as to endanger her health or life, and, notwithstanding the keeping of the said agreements by the said party of the first part, his said wife shall voluntarily forsake her said husband and refuse to live and to care for him until his death as his wife, then, and in that event,

she forfeits all claim to the real and personal property mentioned and referred to in this agreement which was to be conveyed and given to her by her said husband, and said party of the second part, in such event, would take only such property out of her husband's estate as is allowed to her by law. In event of her death during his life, the deed was to be a nullity, and no title to pass at his death.

The petition was filed September 28, 1908, and the appointment of a temporary guardian for the management of his property requested, with the prayer that a permanent guardian may be designated for that purpose, and also to take such steps as may be essential, in order to restore to his estate the title or right to claim any of his property acquired by his wife since their marriage. The grounds on which such action is sought are that (1) he has become a spendthrift, (2) has become addicted to the excessive use of intoxicating liquors to such an extent as to render him incapable of managing his business affairs, and (3) his mind is unsound.

Only the last ground was submitted to the jury, and appellant contends that this was error, in that the evidence was such that a verdict should have been directed for defendant. A detailed review of the evidence contained in an abstract of over 400 pages is impractical and would serve no useful purpose. It is enough to say that for more than twenty-five years prior to July 25, 1908, the defendant had used intoxicating liquors excessively, frequently becoming intoxicated, and evidence was adduced tending to prove numerous incidents and circumstances in their nature so unusual or unnatural as that they tended to indicate a disordered or diseased intellect; and nonexperts, basing their conclusions on these ,expressed the opinion that he was of unsound mind, as did two experts. On the other hand, numerous nonexperts were of opinion that his mind was sound, as were two experts. We have thoroughly examined the record, and are content with the ruling that the evidence was

such as to carry the issue as to whether defendant was of
sound mind to the jury.

I. The evidence tended to show that defendant believed, and had done so for some time, that his children were
at enmity with him; that they and his first wife had conspired together to divest him of his property;
and that they had been idlers, and had never
worked as they should in performing their
duties about the farm. To prove these were delusions,
evidence was adduced, over objection, tending to prove, in
substance, that his children had been obedient to their
father, and had always done what he had required of them,
and also the labors performed by their mother to his knowledge. As contended by appellant, though not in this connection, it was essential, in order to prove his beliefs were
delusions, to show that they were unfounded, and such was
the purpose of this testimony.

A delusion, such as indicative of an unsound mind,
is a belief in something impossible in the nature of things,
or impossible in the circumstances surrounding the afflicted
individual under investigation, and which refuses to yield
to evidence or to reason. *Scott v. Scott,* 212 Ill. 597 (72
N. E. 708). It is defined in *Potter v. Jonas,* 20 Or. 239
(25 Pac. 769, 12 L. R. A. 161), as "a conception that
originated spontaneously in the mind without evidence of
any kind to support it, which can be accounted for on no
reasonable hypothesis, having no foundation in reality, and
springing from a diseased and morbid condition of the
mind." "A delusion is not necessarily a belief in something impossible in the nature of things or the circumstances of the case; but if the belief is entertained against
all evidence and probability, and after argument to the contrary, it affords grounds for inferring that the person labors
under an insane delusion." *Medill v. Snyder,* 61 Kan. 15
(58 Pac. 962, 78 Am. St. Rep. 307).

The belief entertained by defendant, though, owing

to its character, likely unfounded, might be true; but this was not to be assumed, in the absence of evidence so showing. *Drum v. Capps,* 240 Ill. 524 (88 N. E. 1025); *In re McGovran's Estate,* 185 Pa. 203 (39 Atl. 816). If the belief is well founded, or the individual under investigation has reasonable grounds for entertaining it, then, of course, it is not to be regarded as a delusion. *Bradley v. Palmer,* 193 Ill. 15 (61 N. E. 856); *Skinner v. Lewis,* 40 Or. 571, (62 Pac. 523, 67 Pac. 951).

The evidence was admissible as tending to show that defendant's belief was unfounded. In so holding, we are not to be understood to approve of all the rulings on the admissibility of this class of evidence. For instance, it was incompetent to permit a witness to express his opinion generally that the sons were "good boys," or that they did not shirk, or that they were "hard workers," and the like. These were mere conclusions. The witnesses should have been required to state what they had observed, and allow the jury to determine whether they would infer as much. And it was not material how they compared with neighbors' children, as was sought to be shown in cross-examination. They were not on trial and the evidence was merely for the purpose of showing whether there was any foundation for defendant's belief of what they were and had been. The evidence might well have been carefully restricted to the refutation of defendant's beliefs.

Proof of his first wife's devotion and sacrifices was only material for this purpose; and the circumstances that she and the children dressed with extreme plainness, and did not attend church, and the latter had 2. SAME. little schooling, could not well be construed into evidence of defendant's mental unsoundness. He may have misconceived his obligations to his family, and have disregarded many of the amenities which render life worth living; but this is not so unusual as that proof thereof should be regarded as indicative of insanity. It shows

rather that he was stingy and mean, and the evidence should have been excluded, save wherein his conduct or what he may have said was involved. The theory of the plaintiff was that, through the continual use of intoxicants and unrestrained passion, his mind had gradually weakened until he had become incapable of caring for his financial affairs, and, of course, as bearing thereon, what he had done and said for many years was pertinent to the issue. On this ground, evidence that he had habitually cursed his wife and children during many years, and applied to them vile epithets, and questioned the chastity of his daughters when but eleven or twelve years of age, was admissible. As argued, a person may employ the language he indulged in, or consume the intoxicants he was shown to have disposed of, without being of unsound mind; but this does not obviate the probative value of such evidence, when considered in connection with other circumstances indicative of a weakened or diseased intellect. Generally the class of testimony to which objection was interposed was admissible.

II.   The defendant was shown to have entertained the belief that his first wife stole from him and gave to the children, and that they conspired together with the design of divesting him of his property, and that his children were "robbers." It is argued that there was no evidence to refute the truth of such belief; and therefore it could not be regarded as a delusion. Were the premises correct, there would be no difficulty about the conclusion; but we think there was ample evidence in the record to indicate that his conviction on these matters was without foundation.

3. SAME.

III.   Thomas Lang operated defendant's farm two years on shares, and one of the grounds for thinking him a "robber" was, as defendant testified, that his son had appropriated the proceeds of cattle and hogs sold, without paying him his share. The son swore he had furnished defendant a statement, to which he

4. SAME.

made no objection, and kept a copy of it himself. Defendant denied having received any such paper, and the copy was introduced in evidence. It was the best evidence available of what the son claimed to have furnished his father, and was admissible as bearing on the issue of whether defendant's belief was unfounded.

IV.   Evidence was received tending to prove that defendant's present wife occupied a room at a hotel in Sioux City overnight with a man namd Burnett in June, 1908;
that she had danced in the bowery with one
5. Same.
Butler, who had formerly fought over her with Burnett at defendant's house shortly before he had married her; and that she was seen in a buggy with one Lockmiller at a late hour in the evening in Dennison. All this evidence should have been excluded. None of the incidents were shown to have been known to defendant; and that his wife may have been lascivious had no bearing on the issue being tried.

V.   In the opening statement, counsel for plaintiff said to the jury that a suit had been started in the district court of Crawford county against defendant's wife by Mrs. Burnett for the alienation of her husband's affections. This was objected to, and the objection overruled, on the theory that such evidence would tend to show Mrs. Lang disreputable, and that she had such an influence over Lang as to take away his property. Of course, the bringing of such suit would not be competent to prove anything of the kind, and the facts recited, in no event, could have had any bearing on the issues being tried.

There was evidence tending to prove his present wife to have been of loose morals prior to her marriage, and that defendant, in marrying her, must have known this. He testified he never heard anything against her, and this was stricken on motion. The ruling was erroneous; for his answer tended to rebut any inference which might otherwise have been drawn, had he knowledge of what she was.

Wilbur Hall, a farmer, was called by defendant and testified to having known defendant twenty-eight years; that he had lived about one and one-half miles from him,

6. EVIDENCE: nonexperts: scope of cross-examination.

and had frequently conversed with him; and that, in his opinion, he was of sound mind. On cross-examination, after eliciting the statement that defendant had been drunk about once every two weeks during this time, counsel for plaintiffs propounded a series of hypothetical questions covering nearly every phase of the case, and, over objection, the witness was allowed to answer whether he would regard the matters recited as evidence, or indicative, of insanity. John Deitz, Peter Schau, E. H. Weed, and others also testified, after reciting matters within their observation, to their opinion as to whether the defendant was of unsound mind, and were cross-examined at great length as to what would be or have been their opinion on hypothetical statements of facts recited as indicative of insanity or unsoundness of mind. These suppositious facts were those of which evidence had been adduced, and which were claimed to have a tendency to prove unsoundness of defendant's mind. The opinions of nonexperts in such cases are limited to facts and reasons derived from actual observation, and are only admissible because the courts recognize the difficulty experienced by witnesses in describing to the jury all the conditions and appearances which enter into opinions they express. Many of the earlier decisions excluded them entirely, and this is still the rule in some jurisdictions. Such evidence is admissible in this state, and the rule prevails here, as elsewhere, that on a cross-examination the value of such opinions may not be tested by propounding hypothetical questions; nor may these be submitted to such witnesses on direct examination. *Hogmire's Appeal,* 108 Mich. 410 (66 N. W. 327); *Dunham's Appeal,* 27 Conn. 192; *Ragland v. State,* 125 Ala. 12 (27 South. 983); *Appleby v. Brock,* 76 Mo. 314; *Bell v. McMaster,* 29 Hun (N. Y.)

272; *St. Louis Mut. Life Ins. Co. v. Graves,* 6 Bush (Ky.) 268; *In re Dolbeer's Estate,* 149 Cal. —— (86 Pac. 695, 9 Ann. Cas. 795); *Rambler v. Tryon,* 7 Serg. & R. (Pa.) 90 (10 Am. Dec. 444).

In the last case, such questions were declared to be ensnaring, to which the witnesses themselves might object, because calling for opinions, not based on their own knowledge and observation, but on that of others, and it was said that:

The witnesses had already given the opinion and the facts on which they founded it, and the jury were to judge of the correctness of any opinion from the facts and reasons stated by the witnesses. And the witnesses' opinion of the capacity of a man must not be founded on the hearsay of others, or the oath of others. As well might the defendants in error have called for the opinion of any bystander who had heard the evidence given by them of the state of the man's mind. . . . To give such latitude as was allowed in this case to a cross-examination would be trying the case, not by the evidence of facts and opinion formed by witnesses from their own observation and knowledge, but would be trying it on opinions founded on hearsay and facts stated by others, unknown to the witnesses, and altogether inconsistent with their knowledge and with the knowledge to which they had testified.

*In re Dolbeer's Estate, supra,* the court said that "hypothetical questions involving facts not testified to by the witnesses themselves were put by contestant to certain nonexpert witnesses familiar with the deceased, and by the court were ruled out. These rulings were proper. No case has been cited which allows such a line of inquiry, even upon cross-examination, and as to the impropriety of such questions reference may be made to" the cases above cited. The rulings by which hypothetical questions were permitted to be propounded to nonexpert witnesses were erroneous; and as in such questions the matters claimed to be indicative of soundness were repeated over and over

again, and as the inquiries had a tendency to ensnare the witnesses and discredit the opinions they had expressed, these rulings were extremely prejudicial.

Frank Lang, when on the witness stand, was asked whether he did not remember that two or three years before the death of his mother he and she entered Harding's office

**7. INSANITY: evidence.** to consult in regard to a settlement or division of the defendant's property. The objection was sustained. This was erroneous. The defendant was shown to have entertained a suspicion that his wife and children were conspiring against him with the purpose of divesting him of his property. An answer to this in the affirmative would have tended to justify such suspicion, and to have obviated the inference, otherwise to be drawn, that his belief was an insane delusion.

On June 20, 1908, on the solicitation of G. B. Goin, he bought 240 acres of land without examining it, though he knew its condition in a general way, as it was but three

**8. SAME.** miles from his own farm, for $11,000, on agreement that they should share profits equally. He paid $1,000 down, and shortly afterwards the land was disposed of at an advance of $1,550. In August of the same year, he bought a section of land in Monona county under the same arrangement, except that he was to have 6 percent per annum on the money invested and share equally with Goin the profits above that. He paid $1,000 down, and undertook in the purchase contract to pay $29,440 on the first of the following March. He did not examine this land, though he may have passed over it many years previous. In connection with this evidence, it was made to appear that, prior to the death of his first wife, he had been accustomed to examine everything cautiously before purchasing, and had acted solely on his own judgment. The evidence was competent and rightly considered a circumstance bearing on the issue to be determined. Evidence that others may have been accustomed to seek for or act

on the advice of bankers, as was sought to be shown by appellant, was rightly rejected; the change in method pursued by him only being relevant, and the extent of the obligation in consequence.

Counsel for defendant was unduly restricted in his examination. As the issue was the condition of his own mind, great latitude should have been given, and counsel

9. SAME: examination of one charged with insanity.

permitted to ask questions calculated to test his mental capacity. In examining him concerning the making of the papers on July 25, 1908, on objection, the court limited him to reciting what was said, and excluded all expressions of opinion. Thus he was asked: "What is the fact of your understanding of these papers that night? Did you or did you not, understand that you had given your wife anything by these papers?" This was objected to as incompetent, irrelevant, and because the papers expressed the intent. The objection was sustained. The ruling might well have been the other way. It was competent to test the defendant as to the correctness of his opinions and of his power to reason. Again, he testified that he had been in jail at Charter Oak for drunkenness twice, and was asked: "Just tell about your appealing; what you remember about having appealed from that decision." An objection that the record was the best evidence was sustained and adhered to, upon explanation by his counsel that this was not testimonial evidence, but to illustrate the condition of defendant's mind. Again he was asked, "How frequently have you been so intoxicated as to disable you from business?" An objection that this was incompetent was sustained. We think an answer should have been allowed. Again, he was asked, "What was your purpose, regarding the use of intoxicating liquors, at the time you signed the contract?" An objection that the contract expressed the purpose was sustained. The objection should have been overruled. He was asked whether he still had an inclination to use intoxicating liq-

uors, and whether he thought himself able to refrain therefrom, but objections thereto were sustained, and he was not permitted to state what had brought about a change in his life in quitting the drink habit, nor to state how this had affected his business interests, nor to state how much time he had been disabled by sickness in the past from doing work; and his statement, in answer to question, that he had been careful and had done the best he could in caring for his money was stricken out. Counsel should have been permitted to inquire into all these matters and to propound such interrogatories as might indicate his manner of speech, his memory, his state of health, his ability to comprehend what he had done or proposed to do, the accuracy or inaccuracy of his judgment, and generally such matters as might aid the jury in deciding the issue being tried.

The intimation in the twelfth instruction that the opinions of the medical experts, in response to hypothetical questions, should be given greater weight and consideration than those of nonexperts may as well be eliminated on another trial. The jury should be left free to pass on the relative value of the opinions of the several witnesses.

10. EXPERT EVIDENCE: weight: determination.

In the eighteenth instruction, the jury was told, even though defendant is able to acquire property and to manage business, so as to increase his estate, "yet, if you believe from the evidence that he has not sufficient mental capacity to be trusted with the just protection of his property, and may become subject to the will of others in disposing of his property, then you should find in favor of the appointment of a guardian." The thought sought to be conveyed is evident, but not happily expressed. That he may become subject to the will of others some time is not ground for appointment of a guardian now. If, however, he has insufficient mental capacity for the just protection of his property, and his mental condition is such that he is guided by the will of

11. GUARDIANSHIP: insane persons.

others, rather than his own, in the disposition of property, a guardian should be appointed.

We have not undertaken to pass on all of the numerous errors assigned and the omission of any is not to be treated as an approval of the particular ruling. Some requiring consideration may have been overlooked in appellant's brief of 446 pages, wherein assignments of error, brief points, suggestions, and arguments are intermingled without much attention to order, logical sequence, or facilitating investigation. This brief is inexcusably prolix, and the cost of printing 200 pages only will be taxed.—*Reversed.*