No. 25,209.

EDITH ROWE WEICHOLD, a Minor, by Her Guardian and Next Friend, WILLIAM WEICHOLD, *Appellee*, v. HARLAN DAY and FRANK ROWE, *Appellees*, ETTA M. ROSE, C. C. McCONNELL, Executor, et al., *Appellants*.

SYLLABUS BY THE COURT.

1. WILLS—*Setting Aside—Lineal Heirship of Contestants—Evidence.* In an action to set aside the probate of a will and to cancel it, and for partition of the estate which the will purported to dispose of, the record examined and held to show that, partly by admissions in the pleadings of the. adverse litigants and otherwise by competent evidence, the lineal heirship of the minor plaintiff and of her minor brother defendant and their right to share in their deceased grandmother's estate was sufficiently established to support the finding of the trial court thereon.

2. LIMITATION OF ACTIONS—*Contest of Will—Removal of Bar.* Rule followed, that where a right of action to contest the validity of a will inheres in one proper party plaintiff, the action brought by him inures to the benefit of all persons interested with him in the estate, although they themselves would be barred by the statute of limitations from instituting the action or otherwise estopped to question the validity of the will.

3. WILLS—*Setting Aside—Return of Benefits Received.* Rule followed, that a person who without fault and in ignorance of facts invalidating a will accepted benefits under the will is not precluded from maintaining his rights in litigation which is properly brought to set aside the probate of the will and to cancel it, although his right to do so may be dependent upon his return of the benefits so received or on his offer to account for them.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed June 6, 1925. Affirmed.

*Alton H. Skinner,* and *James A. Troutman,* both of Topeka, for the minor appellants.

*B. T. Riley, B. L. Sheridan, Frank M. Sheridan,* all of Paola, and *T. A. Moxcey,* of Atchison, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to set aside the probate of the purported will of Susan A. Day, deceased, and to cancel it.

For some time prior to her death at an advanced age, Susan A. Day lived alone on a farm in Miami county. She was a woman of some means. She had been the mother of three children, Etta, Harlan and Stella. Etta married a man by the name of Rose, by whom she had three children, John, Alton and Victor. Stella married a man by the name of Rowe and died leaving two children surviving

her, Edith Rowe Weichold, and Frank Rowe *alias* Edwin Genthe.
These two children of Stella were minors when this action was
begun.

The purported will of Susan A. Day devised 240 acres of land to
her daughter Etta Rose; a life estate in 160 acres to her son Harlan
Day, with remainder over to Etta if she survived him, otherwise to
her children then living; and all the residue of Susan's estate to Etta
and Harlan in equal shares, subject to the following items:

"Second.   I give and bequeath to my granddaughter, Edith Rowe, the
sum of $1.

"Third.   I give and bequeath to my grandson, Frank Rowe, the sum of $1."

The will bore the date of May 10, 1919, and Susan A. Day died
two days later.

Through the initiative of Etta Rose the will was admitted to pro-
bate, and both Etta and Harlan received and accepted certain por-
tions of the estate pursuant to the will.

On May 5, 1921, Edith Rowe Weichold, a minor, commenced this
action by her guardian and next friend, William Weichold, alleg-
ing that she and her brother Frank were grandchildren of Susan A.
Day and the sole surviving heirs of their mother, Stella Rowe, and
that they and Etta Rose and Harlan Day were all and exclusively
the heirs of Susan A. Day.   Plaintiff set up the illegality of the will
in various particulars, and prayed that the order of the court pro-
bating the will be set aside, that it be adjudged that the instru-
ment in controversy was not the will of Susan, that Susan died in-
testate, and that the property be divided as the law directs, and
that Etta and Harlan be required to account for what they owed or
had received from the estate of Susan.

Issues were joined between all the parties interested.   The trial
court heard the evidence, made findings of fact and conclusions of
law, and gave judgment for plaintiff substantially as prayed for.
One of the findings reads:

"1.   Susan A. Day died the early morning of May 12, 1919, leaving as her
sole heirs Mrs. Etta Rose, Harlan Day, Edith Rowe Weichold, and Frank
Rowe; the last two being children of a deceased daughter."

The executor and Etta Rose and her children appeal.   Their main
attack on the judgment is that there is no evidence to support the
trial court's finding that the plaintiff Edith Rowe Weichold and the
defendant Frank Rowe are heirs of Susan A. Day or children of her
deceased daughter.

In the oral argument before this court it was asserted on behalf of the appellees that this question was never a matter of genuine dispute in the trial court. The record rather persuasively indicates that this contention is correct, but as this court has studiously perused the abstract, counter abstract and supplemental abstract, as well as the briefs, we perceive no difficulty in determining the merits of appellants' main contention without passing on the point raised by appellees.

Touching the relationship of plaintiff Edith Rowe Weichold and Frank Rowe to Susan A. Day, deceased, the record shows that the plaintiff's petition sufficiently alleged that they were the grandchildren of Susan, through the lineage of their dead mother, Stella Rowe, Susan's daughter. Etta Rose's answer admitted that she and Harlan, "and Stella Rowe, now deceased, were and are the only children of Susan A. Day, deceased." Etta's answer further recited:

"Defendant, further answering, admits that by the terms of said will of the said Susan A. Day, deceased, that the plaintiff Edith Rowe was given the sum of $1 and the defendant Frank Rowe was given the sum of $1."

The answer of McConnell, executor, admits "that the heirs of Susan A. Day, deceased, were the persons set out in plaintiff's petition." The answer of John, Alton and Victor Rose, minor children of Etta, by their guardian *ad litem,* admits "that Stella Rowe, deceased, was a daughter of the said Susan A. Day, deceased."

It also fairly appeared that Stella Rowe died while her children, Edith and Frank, were very young, and that Edith was reared by a man named Weichold, in Marion county, and Frank was reared by a family of the name of Genthe, in Houston, Tex.

Eva Day deposed:

"Q. Do you know who Edith Rowe Weichold and Frank Rowe are and what relation they bear to Susan A. Day? A. They are her grandchildren."

Harlan Day testified:

"A. I have a dead sister.

"Q. What was your dead sister's name? A. Stella Day Rowe.

"Q. When did she die? A. I could not tell you just the date. It was several years ago. . . .

"Q. How many children had Mrs. Rowe, your sister? A. Two.

"Q. What are their names? A. Frankie and Edith.

"Q. And this is Edith that is here? A. Yes.

"Q. And Frankie resides where? A. In Houston, Tex., I believe it is.

"Q. And those two children are the only children of Stella? A. Yes, sir."

Weichold v. Day.

McConnell, the executor, who had "typed" the will from a copy furnished by Etta, was asked this question:

"Q. Did she [Etta Rose] make any suggestion whatever to you at any time during the time you were making the will, with reference to the will?"

The witness answered:

"A. There was a question in my mind as to the proper way of spelling the names of these Rowe children—their given names. I consulted Mrs. Rose in that respect to know that I had their names properly spelled. I didn't know the children; didn't know the existence of such children until that time as to know what their given names were."

From the foregoing it will be seen that the relationship of plaintiff and her brother to Susan A. Day, through their mother, Stella, was in part admitted by the pleadings of the adverse parties, and there was ample evidence to supply such links in the chain of facts to prove that relationship on all essential matters not conceded. It follows that appellants' main contention in this appeal cannot be sustained.

Another point raised by appellants has reference to the fact that defendant Harlan Day joined in the proceeding to probate the will in May or June, 1919, and that he received and accepted benefits under the will, and that by such participation in the probate of the will, and by the lapse of more than three years since such probate before he filed any pleading in this action, as well as by his acceptance of benefits under the will, he is barred and estopped from maintaining an action to set aside the will or from otherwise assailing it. This contention is partly correct, but not the consequences which appellants would deduce therefrom. While Harlan Day could not maintain this action (assuming all the premises urged by appellants), once the bars are taken down for the adjudication of the property rights of other litigants, or where there is no bar as to other litigants, and the adjudication would or might affect the rights of Harlan Day, he could not be excluded from participating in this action. And, moreover, neither equity nor good conscience required him in this lawsuit to *persist* in any prior inequitable attitude he may heretofore have taken, knowingly or unwittingly, against the interests of his dead sister's children through his former participation or acquiescence in the probate of the will. This court has held that where an action to set aside a will is properly brought by a *bona fide* litigant who is not barred by the statute of limitations from maintaining it, such action inures to the benefit of all others concerned who intervene in the action,

although they themselves would be barred by the statute from instituting it. (*Maurer v. Miller,* 77 Kan. 92, and citations, 93 Pac. 596; 28 R. C. L. 394.) In *Rockwell v. Junction City,* 92 Kan. 513, 516, 141 Pac. 299, the principle involved in *Maurer v. Miller* was discussed by the chief justice:

"*Maurer v. Miller,* 77 Kan. 92, 93 Pac. 596, 15 A. & E. Ann. Cas. 663, is cited as an authority sustaining the claim that the bringing of the action by Rockwell inured to the benefit of the subsequent intervenors. That was an action to contest a will; a proceeding *in rem* which affected the interests of all the parties who had an interest in it. That was a case where there was community or privity of interest between the intervenor and the other parties, as the will was an indivisible thing and the judgment on the contest either established it as a whole or wholly set it aside. In a case note in 15 A. & E. Ann. Cas. 664, many cases are cited to the effect that if an action is begun before the statute of limitations has run it will inure to the benefit of persons who intervene after the time when an action would be barred, providing there is a community of interest or privity of estate existing between the intervenor and the other plaintiffs."

In *Powell v. Koehler,* 52 Ohio St. 103, 49 A. S. R. 705, 26 L. R. A. 480, the action was to contest a will. Plaintiff had been a minor and under other disability when the will was probated. Other persons who would profit by the success of her action were barred by the statute of limitations from attacking the will. While the plaintiff was defeated on another ground, it was held that so long as the right of action was saved to any one plaintiff, the action brought by her inured to the advantage of all persons interested with her in the estate, for the will, being an entirety, was wholly inoperative when set aside at the suit of any party, and the estate would then have to be divided and distributed under the law.

It is the law, of course, that a person who, without his fault and in ignorance of facts affecting the validity of a will, has accepted benefits under it has to return those benefits or offer to account therefor before he can take the initiative to set aside the will. (*Medill v. Snyder,* 61 Kan. 15, 58 Pac. 962; *Dreisbach v. Spring,* 93 Kan. 240, 144 Pac. 195; Note in 130 A. S. R. 186, 212 *et seq.*) But here Harlan Day made no difficulty about that matter, and the judgment properly took care of that feature of the action.

The record and files of this case present some minor questions of appellate procedure, but as there is no substantial error in the judgment which would justify or compel its reversal or modification, they need not be decided.

The judgment is affirmed.