No. 39,902

No. 39,903

In the Matter of the Estate of Laura Ellen Teetzel, Deceased, EARL W. TEETZEL, *Appellant,* v. LOIS FAY CORNELSSEN, Individually and as Administratrix, c.t.a., *Appellee.*

In the Matter of the Estate of Floyd Teetzel, Deceased, EARL W. TEETZEL, *Appellant,* v. LOIS FAY CORNELSSEN, Individually and as Executrix, *Appellee.*

(292 P. 2d 1091)

Opinion filed January 28, 1956.

*Harry G. Wiles,* of St. John, argued the cause and *S. R. Blackburn, Tudor W. Hampton* and *Jerry M. Ward,* all of Great Bend, were with him on the briefs for the appellant.

*Arthur R. Gates,* of St. John, argued the cause and *Robert Garvin, Evart Garvin* and *Morris Garvin,* all of St. John, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: These were proceedings to probate wills. The probate court admitted them to probate. One, opposed in each case,

appealed to the district court. The district court dismissed the appeals. The contestant has appealed.

Laura and Floyd Teetzel were husband and wife. He made his will on March 5, 1953. She made hers on March 3, 1953. He died on March 24, 1953. She died on March 11, 1953. The petition asking that his will be admitted to probate stated that he was survived by Lois Fay Cornelssen, his daughter, and Earl W. Teetzel, his son, both adults; that the probable value of his estate was in the aggregate $32,000; that the petitioner, Lois, was named executrix. His will gave three lots in St. John to Earl and all the rest to Lois. It was offered for probate and admitted on March 28. Lois also offered her mother's will. The petition stated that the heirs of the mother were Floyd and Lois and Earl and that the probable value of the estate was $25,500; that Floyd had been named executor in the will, but was dead at the time the will was offered for probate and that Lois was a suitable and proper person to whom letters of administration should be issued. The will gave all of Laura's property to Floyd, her husband. It was offered for probate and admitted the same day, March 28, 1953. On September 30, 1953, Earl appealed from the order admitting these wills to probate. On May 21, 1954, Lois filed a motion to dismiss his appeal and a plea in abatement in each case.

In this motion she alleged the relationship of the parties and that Laura and Floyd had purchased Lots 4 and 5 in Block 22 of the City of St. John and owned such property until their deaths. It alleged Laura had made her will on March 3, 1953, and it had been filed for probate and admitted; and that Earl had entered his appearance in person at that hearing. She then alleged that Floyd had made his will, the terms of it and that it had been admitted to probate; that prior to the deaths of Laura and Floyd, Earl had neither claimed nor owned an interest in any of the described real estate; that during the lifetime of Laura and Floyd they had leased the real estate to one Fuqua for $35 a month and that he was a tenant in possession when the motion was filed; that after the deaths of Floyd and Laura, Lois instructed Fuqua to pay the rent to a bank in her account and on April 27, 1953, and on May 5, 1953, she gave Earl checks for $10, being a part of the rent for April; that on May 11, 1953, she told Earl that under the will of his father the real estate went to him and she was turning it over to him and suggested that he make arrangements with Fuqua to oc-

cupy part of this dwelling; that thereafter Earl attempted to make arrangements with Fuqua but was unsuccessful; that on May 11, 1953, she told Earl she had already paid him $20 and gave him a check for $15, being the balance of the April rent, and that Earl should thereafter take charge of the real estate and collect the rent himself and that she had suggested to Earl that he allow the rent to be paid to the bank and have it credited to his account; that thereafter she directed the bank to so credit the rent and that Earl had been receiving all the rents, including the rent for the month of April, and was still receiving it when she filed the motion; that on July 18, 1953, she had a talk with Earl about paint the mother was said to have bought to paint the house, and she informed Earl that she could not find any record of any purchase of paint; that on October 1, 1953, Earl made and delivered a mortgage on the real estate in question for $126.35, which mortgage was duly recorded.

On October 19, 1954, Earl tendered into the district court of Stafford county the sum of $455, which consisted of $420 that he had withdrawn from his checking account at the bank, and a balance of $35, which Lois had paid him as rent on the real estate in question. He asked the district court to hold that sum until the appeal from the order of the probate court admitting the wills to probate had been tried and asked the court to impound any further rent money.

On October 19, 1954, the court announced its decision and judgment in which it found as follows:

"The court further finds that a mere acceptance under the terms of a will does not invalidate the right of an individual to contest the will, providing that at the time of filing such contest, the contestant tenders into court the amount that he or she has received under such will, or exercises no right to the property conveyed to him by such will, and that if such appellant had done so, he would have a good cause of action on appeal, but the court finds that the tender into court as of this date, October 19, 1954, more than a year after such appeal was filed, is too late, and that the appeal in both the above entitled causes of action should be dismissed at costs of the appellant."

On October 21, 1954, Earl filed a motion to set aside the judgment of October 19, 1954, dismissing the appeal, and asked for leave to submit additional testimony. At the same time he filed an affidavit in which he alleged that he returned to St. John while his parents were sick and was not permitted to talk with them during their last illness; that he was advised orally of the contents of their wills and

a few months after the funeral appellant gave him a check for $10 and a little later another check for $10; that he could not read and did not understand what was going on; that since 1941 he understood the property in question belonged to him as a gift from his grandfather; that he had been in jail a short time prior to August, 1954, and had mortgaged the property to secure money to pay his fine; that after his attorneys had learned he had been receiving the rents and mortgaged the property, they advised him not to take any more money and to raise the money with which to tender back the money that had been paid him.

On January 3, 1955, the trial court announced it had read and considered the affidavit and the tender had been made too late and the judgment originally entered was affirmed.

On March 2, 1955, Earl submitted his notice of appeal to this court in which he stated he had appealed from the judgment rendered on the 19th day of October, 1954, and affirmed on the 3rd day of January, 1955, wherein it was adjudged that the appeal was not good because the tender had been made too late.

After the case reached this court, counsel for Earl filed a motion for an order substituting James W. Jordan as the newly appointed guardian of Earl for the purpose of conducting these appeals and advised that he had been appointed guardian because Earl was incapable of managing his person and estate. At the same time the guardian filed in this court a petition to vacate and set aside the judgment in the lower court because Earl had been declared incompetent and incapable of managing his person and estate during his entire lifetime and that the judgment of the district court of Stafford county was rendered against him while he was incompetent and while he was not represented by a guardian *ad litem,* or a legal guardian, and as a result the judgment was void.

On August 23, 1955, the probate court of Stafford county did find Earl was and had been during his entire lifetime an incompetent person and incapable of managing his person and estate and that it was necessary that a guardian be appointed of his person and estate. James W. Jordan was appointed.

The guardian first argues that his motion to vacate the judgment of the district court filed directly in this court after the appeal had been taken should be sustained. We are unable to follow him in this argument. He makes the point first that since the appeal had reached this court, this was the only one by which such a motion could be heard.

Actually the motion seeks to invoke our original jurisdiction. The matter of the incompetency of Earl never was presented to the trial court. Cases in which our original jurisdiction may be invoked are strictly provided for in our constitution. (See Art. 3, Sec. 3.) This is neither quo warranto, mandamus or habeas corpus. It is doubtful whether even a statute could confer on us jurisdiction to entertain such a motion. There is no such statute here.

Besides all the above, this judgment could not be set aside in such a proceedings unless it were void. It was not void on account of the incompetency of Earl. (See *Sterling v. Goulden,* 136 Kan. 18, 12 P. 2d 812; also *Cooper v. Greenleaf,* 84 Kan. 499, 114 Pac. 1086.) No other reason why it should be held void is called to our attention.

Such an argument also violates the rule that we will not consider any matter that was not presented to the trial court. We cannot consider such a motion.

This conclusion takes us to a consideration of the question whether the trial court erred in sustaining Lois Fay's motion to dismiss the appeal in that court. All parties concede, one may not accept the benefits of a will and at the same time attack the will and seek to set it aside. (See *Weichold v. Day,* 118 Kan. 598, 236 Pac. 649.) Equally well settled and conceded here is the rule that under such circumstances one who has taken under a will may return or offer to return these benefits and then attack it. (See *Weichold v. Day,* supra; *Medill v. Snyder,* 61 Kan. 15, 58 Pac. 962.)

The trial court here recognized both these rules but held that the tender under the circumstances came too late to be availing to Earl. Such is our sole question. The appeals in which he sought to prevent probation of the wills were filed by Earl on October 1, 1953. The tenders were filed October 19, 1954. In the meantime for more than a year Earl had been collecting rent from the house and lot bequeathed him by his father's will and had exercised other acts of ownership. It appears that counsel for Earl did not know about his having accepted these benefits until his sister had filed her motion to dismiss the appeal in each case and immediately on hearing of it had him make the tender. The fact that his counsel did not know about it, however, does not lessen the effect such taking had on his rights to contest the will.

After the trial court had sustained the motion to dismiss Earl filed a motion to set aside that judgment. With that motion he furnished an affidavit of what he could prove should his appeal from the order

admitting the will be heard. The trial court examined this affidavit which purported to explain why Earl accepted the rental from the property and in effect held such was not sufficient to enable him to attack the will under all the circumstances. We are unable to find any error in such holding.

The judgment of the trial court in each case is affirmed.